UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 9:19-CV-80062-ROSENBERG/REINHART

TIMBERCREEK ASSET
MANAGEMENT, INC.,

    Plaintiff,

v.

EDUARD DE GUARDIOLA,

    Defendant.
                        /

## ORDER GRANTING PLAINTIFF'S MOTION TO REMAND

**THIS CAUSE** is before the Court on Plaintiff's Motion to Remand [DE 8]. The Motion has been fully briefed. For the reasons set forth below, the Motion is granted.

Defendant removed this action under 28 U.S.C. § 1332, contending that the parties are diverse with an amount-in-controversy exceeding $75,000. All parties are in agreement that this is so. The parties also agree that Plaintiff is a citizen of Canada and that Defendant is a citizen of either Georgia or Florida. The dispute before the Court centers on one legal question and one factual question. The legal question is whether Defendant's citizenship is relevant. The factual question is whether Defendant is a citizen of Florida.

Plaintiff's Motion to Remand is premised upon the argument that because Defendant is a citizen of Florida, this action must be remanded under 28 U.S.C. § 1441(b)(2). Section 1441(b)(2) reads as follows:

> A civil action otherwise removable solely on the basis of the jurisdiction under section 1332(a) of this title may *not* be removed if any of the parties in interest properly joined and served as defendants *is a citizen of the State in which such action is brought*.

(emphasis added). This rule is colloquially known as the "forum defendant rule." *E.g., Goodwin v. Reynolds*, 775 F.3d 1216 (11th Cir. 2014). Defendant argues that the forum defendant rule does not apply to him because he removed this action before he was formally served. Defendant therefore relies upon the portion of § 1441(b)(2) that states that a removal is precluded when the party in interest has been "*properly joined and served*." Defendant's position, then, is that because he removed his case very quickly he was permitted, under § 1441(b)(2), to remove a case that would not have been otherwise removable, had he been served prior to his notice of removal. Case law refers to Defendant's removal tactic as a "snap removal," and the topic of snap removals has received considerable discussion in case law.

## *Case Law on Snap Removals and Forum Defendants*

Courts are in agreement that the plain language of § 1441(b)(2) allows for a snap removal, and one appellate court has held that in light of that plain language snap removals are permissible. *Encompass Ins. Co. v. Stone Mansion Rest. Inc.*, 902 F.3d 147, 154 (3rd Cir. 2018). Courts in this Circuit, however, have engaged in analysis that looks beyond the plain language of § 1441(b)(2), as explained in more detail below.

Case law on snap removals has accelerated in recent years because of the rise of electronic docket monitoring. *E.g., Delaughder v. Colonial Pipeline Co.*, No. 18-CV-04414, 2018 WL 6716047, at *3 (N.D. Ga. Dec. 21, 2011). Thus, because it has become increasingly possible for defendants to constantly monitor court dockets, it has become easier for defendants to file notices of removal before they are served. *Id.* The Eleventh Circuit Court of Appeals has yet to definitively rule on the permissibility of snap removals, however, there is a strong indication of the Eleventh Circuit's opinion on the practice.

By way of background, § 1441(b)(2) used to contain slightly different language: the statute used to preclude removal when *none* of the parties in interest had been properly joined and served.

*Id.* at *4. Analyzing that language, district courts in this Circuit reasoned that snap removals were permissible, but only if at least one of the defendants in the action had been properly served. *Hawkins v. Cottrell, Inc.*, 785 F. Supp. 2d 1361 (N.D. Ga. 2011). Thus, a defendant could utilize a snap removal before being served, but only if another defendant *had* been properly served. *Id.* at 1370. To hold otherwise, trial courts reasoned, would produce absurd results. *Id.* at 1371-74. Subsequent to cases such as *Hawkins*, § 1441(b)(2) was amended to the modern-day version by replacing "none" with "any," which effectively eliminated the possibility of a removal when one defendant had been served—either a case was removable prior to service or it wasn't.

The Eleventh Circuit considered the amended, modern-day version of § 1441(b)(2) in *Goodwin v. Reynolds*, 757 F.3d 1216 (2016). In *Goodwin*, the Eleventh Circuit reviewed a district court's decision to grant a plaintiff's motion dismiss without prejudice after a defendant snap removed. Although the Eleventh Circuit's focus was on the motion to dismiss, the court did discuss snap removals at length, albeit in *dicta*. Looking to the purpose of the forum defendant rule at large and the "properly joined and served" language, the court concluded: "[b]ecause the likely purpose of this language is to prevent gamesmanship by plaintiffs[1] . . . we cannot believe that it constrains the district court's discretion . . . to undo Defendants' gamesmanship."

Subsequent to *Goodwin*, district courts in this Circuit[2] have cited *Goodwin* to invalidate snap removals. In *Wolfe v. Schindler Elevator Corporation*, No. 17-CV-2448, 2014 WL 6470698, at *3 (M.D. Fla. Nov. 17, 2014), the district court strongly disfavored snap removals:

> Just because SEC found out about the lawsuit from a source other than Plaintiffs themselves does not undermine the fact that SEC purposefully removed this case before Plaintiffs served either defendant in order to avoid the forum defendant rule. SEC's exploitation of the forum defendant rule and the technicality that HCAA was

---

[1] The reason the forum defendant rule prevents gamesmanship by plaintiffs is that it keeps plaintiffs from adding parties to a suit solely for the purpose of preventing removability. *E.g.*, *Goodwin*, 757 at 1221 (collecting cases).
[2] The Court has been unable to locate a post-*Goodwin* decision on snap removals in this District.

3

not yet served does not insulate it from the Court's power to grant Plaintiffs a voluntary dismissal without prejudice.

In *Delaughder v. Colonial Pipeline Company*, No. 18-CV-04414, 2018 WL 6716047, at *4-6 (N.D. Ga. Dec. 21, 2018), the district court analyzed at length the reason snap removals are problematic. *Id.* Calling snap removals "absurd," the district court reasoned as follows:

> "The forum-defendant rule clearly contemplates Plaintiff's ability to defeat Defendants' purported right of removal in this case." *Goodwin*, 757 F.3d at 1221. Like in *Goodwin*, it is undisputed that if Colonial or Superior had been served before Colonial removed this case, the forum-defendant rule would have barred removal. In fact, also like *Goodwin*, the Court dismissed Plaintiffs' first case without prejudice to allow them to accomplish this goal. The only reason this case is in federal court is that the same day the Court dismissed Plaintiffs' complaint, Colonial changed its registered agent from CSC to Northwest, without notifying Plaintiffs. As a result, Plaintiffs were unable to serve Colonial until over a month after filing their complaint in state court. Perhaps predictably, as soon as Plaintiffs' service to CSC failed, Defendants removed to federal court, before service. Defendants' interpretation of § 1441(b)(2) would tie the Court's "hands in the face of such gamesmanship on the part of Defendants." *Id.* While the Court agrees with Colonial that service before removal is not always required, snap removals uniquely undermine the purpose of the forum-defendant rule and contravene the removal legal standard articulated above.
>
> The purpose of the forum-defendant rule and Congress's intent in enacting the statute, as well as including the "properly joined and served" language, has been widely analyzed by district courts across the country. *See Little v. Wyndham Worldwide Ops.*, 251 F. Supp. 3d 1215, 1221 (M.D. Tenn. 2017) (providing a calculated analysis of the issue and noting the forum-defendant rule's reinforcement of "the underlying reason behind the perceived need for diversity jurisdiction, to wit, protecting out-of-state defendants from homegrown, local juries."); *Hawkins v. Cottrell, Inc.*, 785 F. Supp. 2d 1361, 1373 (N.D. Ga. 2011) (providing an in-depth analysis of Congress's intent on the issue).
>
> This Court will follow the purpose first articulated in this Circuit in *Hawkins* and later honed in *Goodwin* and *Wolfe*; namely, that the forum-defendant rule was included in the removal statute to prevent gamesmanship by keeping "plaintiffs from blocking removal by joining a forum defendant against whom the plaintiff does not intend to proceed against." *Wolfe*, 2014 WL 6470698, at *2 (M.D. Fla. Nov. 17, 2014) (citing *Goodwin*, 757 F.3d at 1221).

Subsequent to the above analysis, the *Delaughder* court went on emphasize that snap removals undermine the very purpose for the forum defendant rule's existence:

> The Court does not criticize Colonial for applying a now wide-spread litigation tactic. Rules will inherently empower sharp lawyers to find ways around them, and that is not inappropriate. Instead, this decision is meant to close an absurd loophole in the forum-defendant rule and to uphold the purpose and integrity of the rule. The fact that the very words included to prevent gamesmanship have opened an avenue for more gamesmanship is an ironic absurdity that the Court will not enforce simply because the words "properly joined and served" appear unambiguous in isolation, and Congress has not provided more guidance on the issue. A small step back from the phrase provides the explanation needed for the snap removal issue, which is further supported by traditional removal rules and standards.

*Id.* at *6.

In facial contravention to the two district court orders cited above, one district court in this Circuit has, post-*Goodwin*, permitted a snap removal. However, that district court decision, *Francis v. Great West Casualty Company*, No. 17-CV-432, 2018 WL 999679 (M.D. Ga. Feb. 21, 2018), neither cited nor discussed *Goodwin*. Additionally, the district court did not cite or discuss any case decided after *Goodwin*. Finally, the distinguishable facts before the court in *Francis* include the fact that two of three defendants *had* been served at the time of removal. *Id.* at *2.

In summary, the Court finds the reasoning of *Goodwin*, *Wolfe*, and *Delaughder* highly persuasive for the reasons set forth at length in the *Delaughder* decision—the forum defendant rule bars the removal of suits when the forum defendant, engaging in litigation gamesmanship, removes a suit prior to service of process.

### *The Application of Case Law on the Forum Defendant Rule to the Instant Case*

Applying cases such as *Goodwin*, *Wolfe*, and *Delaughder* to the case at bar, the Court examines the evidence of Defendant's gamesmanship. Plaintiff initiated this case on January 11th. On the following day, January 12th, Plaintiff attempted to serve Defendant at his Florida address. DE 11 at 2. Plaintiff's residence was gated and, as a result, the process server was required to use a callbox. *Id.* Defendant answered the call box and spoke to the process server, but the process

server was unable to serve Defendant.[3] *Id.* The process server returned on January 14th and Defendant's wife answered the call box, but again the process server was unable to serve Defendant. *Id.* Plaintiff then arranged for three attempts to serve Defendant at an address in Atlanta, but those attempts were unsuccessful as well because Defendant's "personal secretary would only provide that [Defendant] was not in and that she was unaware when he would return to the office." *Id.* at 3. In total, Plaintiff attempted to serve Defendant nine times at Defendant's Atlanta and Florida residences. *Id.* On January 16th—five days after Plaintiff filed suit—Defendant filed his notice of removal. After Defendant removed this case, he waived service of process. DE 12.[4]

Had Plaintiff served Defendant, Defendant would not have been able to remove this case. Plaintiff made extraordinary efforts to serve Defendant at two different residences in two different states, but Defendant removed approximately one hundred hours after Plaintiff filed its Complaint. Additionally, after Defendant removed, Defendant waived service of process. DE 12. Defendant's removal and waiver of service came after Defendant was in *direct* communication with process servers—Defendant knew that Plaintiff was aggressively attempting to serve him. It follows, then, that Defendant could have waived service in state court, but instead Defendant made the decision to remove the case and *then* waive service. Under these circumstances, Defendant's gamesmanship is apparent and the forum defendant rule bars Defendant's removal, provided that Defendant is a Florida citizen, which is an issue addressed below.

*The State of Defendant's Citizenship*

Defendant, a trained lawyer, testified at a deposition in 2017 that he was a legal resident of Florida. DE 11-1. Under federal law, "[t]here is a presumption that a person's domicile remains

---

[3] Defendant's position is that both and he wife were out of state at the time but that the callbox transmission was routed to his cellphone. DE 20.
[4] *Pardazi v. Cullman Med. Ctr.*, 896 F.2d 1313, 1317 (11th Cir. 1990).

the same until that person proves that it has changed." *Smith v. Wal-Mart Stores East, L.P.*, No. 07-CIV-22552, 2008 WL 11407155, at *2 (S.D. Fla. Jan. 28, 2008) (citing *Mitchell v. United States*, 88 U.S. 350, 353 (1874)). "An established domicile is given favor over an allegedly newly acquired one." *Jakobot v. American Airlines, Inc.*, No. 10-61576, 2010 WL 2457915, at *2 (S.D. Fla. June 20, 2011). Defendant must prove his domiciliary by a preponderance of the evidence. *E.g., Simmons v. Skyway of Ocala*, 592 F. Supp. 356, 359 (S.D. Ga. 1984).

Defendant's evidence of his domiciliary consists solely of his own declaration.[5] Such declarations are given little weight, "[b]ecause such declarations are often self-serving." *Lustig v. Stone*, 679 F. App'x 743, 745 (11th Cir. 2017); *see also Ciabao v. Lama*, 633 F.3d 1330, 1342 (11th Cir. 2011) ("Courts generally give little weight to a party's profession of domicile; they do so because these declarations are often self-serving."). Because Defendant has admitted under oath that his domicile was recently in Florida, the burden is upon Defendant to prove, by a preponderance of the evidence, that he changed his domicile to Georgia. *E.g., Simmons v. Skyway of Ocala*, 592 F. Supp. 356, 359 (S.D. Ga. 1984). Defendant can overcome the aforementioned presumption against his declaration by proving his change of domicile through any number of objective factors: payment of taxes, procurement of a driver's license, exercise of voting rights, etc. *E.g., Duff v. Beaty*, 804 F. Supp. 332, 335 (N.D. Ga. 1992). Defendant has provided no such objective evidence.

Defendant has provided no evidence that he has a Georgia driver's license, that he is registered to vote in Georgia, or that his cars are registered in Georgia. Defendant has provided no phone records from Georgia, no medical records from Georgia, no objective evidence of employment in Georgia (other than his declaration), no banking records, or evidence that he has paid Georgia income tax. And while Defendant contends that he owns no real property *in his name*

---

[5] Although Plaintiff has also provided some evidence regarding the ownership of his Florida home, that evidence is irrelevant for the reasons set forth below.

in Florida—a reference to the fact that his real property in Florida is titled in the name of a limited liability company—Plaintiff has provided counter-evidence that Defendant and his wife are the sole members of the company and that Defendant and his wife are the borrowers on the mortgage for the property. DE 23-1.

The objective evidence before the Court is that Defendant is domiciled in Florida. At the time this suit was filed, Defendant claimed a homestead exemption on a residence in Florida. DE 11-2.[6] Under the Florida Constitution, the state's homestead exemption requires exempted property to be "the permanent residence of the owner." Fla. Const. art. VII, § 6(a). There is also evidence that Defendant pays taxes in Florida. DE 23-2.[7] Finally, Defendant was previously licensed to practice law in Florida but has never secured such a license in Georgia. DE 23.

For the foregoing reasons the Court concludes: (1) Defendant has provided no objective evidence that he was domiciled in Georgia at the time of suit; (2) Plaintiff has provided objective evidence that Defendant was domiciled in Florida at the time of suit; (3) Defendant relies on nothing more than his own declaration; (4) Defendant's sworn testimony establishes that his domicile was recently in Florida; and (5) the burden of persuasion rests with Defendant. In summary, Defendant has not proven by a preponderance of the evidence that he changed his domicile from Florida to Georgia. The Court next considers whether it will schedule an evidentiary hearing.

### *The Court's Discretion and Evidentiary Hearings*

---

[6] Subsequent to the Motion to Remand Defendant appears to have withdrawn his request for a homestead exemption in Florida. DE 20.

[7] There is evidence that Defendant owns homes in both Georgia and Florida—the ownership of residences is therefore a factor that does not necessarily weigh in favor of any state. Defendant has provided no objective evidence that would allow for the Court to determine which residence is Defendant's preferred residence. The Court also notes that Plaintiff contends it is in possession of evidence that Defendant maintains a Florida driver's license, has multiple vehicles registered in the State of Florida, and is registered to vote in Florida. DE 23 at 3. Because Plaintiff has not filed such evidence with the Court (citing privacy concerns), this contention is not important to the Court's decision, however, the Court notes that Defendant has provided no evidence to counter Plaintiff's assertion.

District courts are afforded broad discretion to determine when an evidentiary hearing is necessary. *See Washington v. Norton Mfg., Inc.*, 588 F.2d 441, 443 (5th Cir. 1979). Here, Defendant was faced with two different evidentiary burdens. First, Defendant had the burden of persuasion insofar as he was required to persuade the Court that he changed his domiciliary from Florida to Georgia. Second, Defendant had the burden of overcoming the presumption that his declaration was self-serving. Defendant could have theoretically met either of these burdens by providing some sort of objective evidence of Georgia citizenship: a driver's license, a vehicle registration, a voter registration, utility bills, phone records, etc. Defendant provided no such evidence. Evidentiary hearings are appropriate when a court must weigh credibility, but in this case there is no competing objective evidence and the only testimony that Defendant relies upon is his own conclusory assertion—there are no competing credibility determinations for the Court to make. This case is like *Simpson v. Fender*. 445 F. App'x 268 (11th Cir. 2011). In *Simpson*, the Eleventh Circuit affirmed a trial court's decision to resolve a citizenship question (without an evidentiary hearing) against a party who relied upon nothing more than self-serving testimony. *Id.*[8] In *Simpson*, the plaintiff conceded that there was objective evidence that his domicile had previously been in Georgia, but he attempted to argue (without objective evidence) that he had made a personal decision to transfer his domiciliary to Florida—a scenario very much like the instant case. *Id.* at 270.

Additionally, Defendant has not requested an evidentiary hearing on the Motion to Remand. In *Sunseri v. Macro Cellular Partners*, 412 F.3d 1247 (11th Cir. 2005), the Eleventh Circuit upheld the trial court's decision to resolve a citizenship question without an evidentiary hearing when the appellant had failed to request such a hearing from the court. *See also Aoude v. Mobile Oil Corp.*,

---

[8] Trial court documents in this case confirm that no evidentiary hearing was held.

892 F.2d 1115, 1120 (1st Cir. 1989) ("[W]e regularly turn a deaf ear to protests that an evidentiary hearing should have been convened but was not, where, as here, the protestor did not seasonably request such a hearing in the lower court."). Because Defendant has not requested an evidentiary hearing and because the Court can see no basis to hold one, the Court will not set an evidentiary hearing on the Motion to Remand.

### *Conclusion and Ruling*

For all of the foregoing reasons, Defendant has not met his burden to persuade the Court that he changed his domiciliary from Florida to Georgia, and Plaintiff's Motion to Remand is granted.

It is therefore **ORDERED AND ADJUDGED** that Plaintiff's Motion to Remand [DE 11] is **GRANTED**, the Clerk of the Court shall **REMAND** this matter to the Fifteenth Judicial Circuit in and for Palm Beach County, Florida, and the Clerk of the Court shall **CLOSE THIS CASE**. Plaintiff's request for attorney's fees is **DENIED**.

**DONE AND ORDERED** in Chambers, West Palm Beach, Florida, this 26th day of February, 2019.

Copies furnished to:  
Counsel of record

_____  
ROBIN L. ROSENBERG  
UNITED STATES DISTRICT JUDGE